IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | | |
|---|---|---|
| KRISTINA KAY SLAYTER, | ) | |
| | ) | Case No. 6:12-cv-01297-JO |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | OPINION AND ORDER |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

JONES, J.,

Plaintiff Kristina Kay Slayter appeals the Commissioner's decision denying her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. The court has jurisdiction under 42 U.S.C. § 405(g). I AFFIRM the Commissioner's decision.

## PRIOR PROCEEDINGS

Slayter filed her applications in October 28, 2009 initially alleging disability beginning in July 2009.[1] Tr. 155. That same day, she amended her application to claim an onset date of March 24, 1968, the date of her birth. Tr. 157. She alleged she could not work due to borderline

---

[1] Slayter previously filed two unsuccessful applications for disability benefits in August 1987 and March 1992. Tr. 173.

1 – OPINION AND ORDER

intellectual functioning, an adjustment disorder and anxiety.  The claims were denied initially in January 2010 and upon reconsideration in April 2010.

The ALJ applied the sequential disability determination process described in 20 C.F.R. sections 404.1520 and 416.920.  See *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  The ALJ found that Slayter engaged in significant gainful activity.  The ALJ also found that Slayter has severe impairments including borderline intellectual function, adjustment disorder and anxiety disorder, which cause more than a minimal effect on her ability to perform work-related activities.  Tr. 16.  The ALJ found that although Slayter could not return to her past relevant work because it required more than occasional contact with the public and coworkers, Slayter retained the residual functional capacity ("RFC") to perform a full range of work at all exertion levels, as long as it was limited to performing simple, routine tasks with little, if any, contact with the public and no more than occasional contact with coworkers.  Tr. 18.

The vocational expert ("VE") testified that a person having Slayter's RFC and vocational factors could perform the activities in occupations requiring simple, routine tasks such as production line assembly or housekeeping/cleaning, representing hundreds of thousands of jobs in the national economy.  Tr. 90.  The ALJ concluded that Slayter was not disabled.  Tr. 21.  The Appeals Council declined Slayter's request to review the ALJ's decision and she filed this action seeking payment of benefits.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190 (9th Cir. 2004). Under this standard, the Commissioner's factual findings must be upheld if supported by

inferences reasonably drawn from the record even if evidence exists to support another rational interpretation. *Batson,* 359 F.3d. at 1193; *Andrews v. Shalala*, 53 F3d. 1035, 1039-40 (9th Cir. 1995).  Furthermore, when a claimant has filed unsuccessful applications for social security, the ongoing presumption of continuing nondisability must be overcome by claimant proving "changed circumstances indicating a greater disability." *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988).

## DISCUSSION

### I.   Claims of Error

In making his decision regarding Slayter's RFC, the ALJ relied on the testimony of the claimant, her application for disability insurance benefits and supplemental security income along with the supporting documentation, her past employment history, her medical records including her physical and mental evaluations and reports, and the function report Toni Kloch submitted.  Slayter contends that in making his determination that Slayter retained the RFC described previously, the ALJ failed to give clear and convincing reasons for rejecting the statements of Slayter and her friend Toni Kloch, and the opinion of Dr. Roman.  Slayter also contends that the Commissioner failed to meet his burden of proving that jobs exist in the national economy that Slayter can perform.

### II.   RFC Assessment

A.  Slayter's Statements

Slayter claims that she has been disabled since birth.  She testified that she received a modified high school diploma.  While in high school, Slayter worked at Papa's Pizza doing dishes and at a delicatessen preparing sandwiches. Tr. 66.  Following high school, she obtained employment at Wal-Mart where she worked in the snack bar.  While employed at Wal-Mart, she

experienced difficulties making change to customers and working quickly. She worked for approximately one year before being let go by Wal-Mart for health reasons. Tr. 47-50.

A short time later, Slayter participated in a workshop during which she stood up and read her resume. The situation was stressful and Slayter broke down. Tr. 54. With the help of her case worker, Slayter submitted an application to Dari Mart and was hired to stock shelves and work as a cashier. Tr. 55-56. After working for two years, she was fired from Dari Mart because she said an inappropriate word while on the phone. Tr. 60, 71. Slayter suffered from infrequent anxiety attacks while employed at Dari Mart and continues to experience problems with anxiety. Tr. 61. At the time Slayter worked for Dari Mart, she and her three sons lived together in a house, but moved back in with her parents due to financial hardships. Tr. 62. Thereafter, Slayter was hired by a second Dari Mart as a cashier. She worked in that position for three years before being fired for misconduct. Tr. 241, 250.

In her function report, Slayter indicated that she spends her days taking care of herself and her youngest son, preparing meals, straightening up the house and doing laundry. Tr. 199. She takes care of two cats and a dog, making certain they are fed and watered. Tr. 200. For entertainment, she reads, plays on the computer, uses Facebook, sews, quilts, crochets, and cross stitches. She attends a sewing class once a week at the ARC in Lane County. Tr. 203. She needs reminders or encouragement to take care of her personal needs and grooming and with the housework. Tr. 200. While she is able to pay bills and count change, she does not understand how to balance a checkbook. Tr. 202. She reported that she does not deal well with stress and crowded places. Tr. 205.

Slayter challenges the ALJ's rejection of her testimony regarding the intensity of her symptoms. "In assessing the credibility of a claimant's testimony regarding subjective pain or the

intensity of symptoms, the ALJ engages in a two-step analysis." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2011). A claimant is required to produce "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986). Once the claimant produces objective evidence of an underlying impairment, the ALJ must provide clear and convincing reasons for rejecting the claimant's testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ is not required to believe every allegation and can use ordinary methods to determine a claimant's credibility. *Molina*, 674 F.3d at 1112.

A review of the ALJ's decision shows that the ALJ considered everything Slayter testified to and reported. The ALJ found Slayter's statements concerning the intensity, persistence and limiting effects of her symptoms to be less than fully credible. This determination was based on the fact that Slayter engaged in sustained, competitive employment at substantial gainful activity levels for years at a time. Slayter's employment records show she was employed from 1996-2002 and then again from 2006-2009. Tr. 162. This level of employment history directly contradicts Slayter's claim that she has been disabled since birth. Furthermore, two prior determinations have found her to be not disabled. Slayter does not contend that changed circumstances have resulted in a greater disability. Rather, she asserts that her past work history is not relevant to the current determination of disability because the ALJ specifically found that she can no longer perform her past work. This argument misses the purpose of the credibility analysis. The ALJ may, as he did here, consider past inconsistencies between a claimant's statements and activities in assessing accurately the extent of a claimant's capabilities. See *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). The inconsistency between Slayter's allegations of disability and her activities is a "specific, clear and convincing

reason" to reject her testimony about the severity of her symptoms.  The ALJ's decision to reject Slayter's assertions is supported by inferences reasonably drawn from the record and thus must be upheld. *Batson,* 359 F.3d at 1193.

B.   Kloch's Lay Witness Statements

Slayter contends that the ALJ's consideration of the lay witness's testimony was incomplete and inadequate.  Lay testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 522 (9th Cir. 2001).  In his determination, the ALJ considered the function report Kloch filed in support of Slayter's application for benefits.  He noted that Kloch had coached the claimant to a gold medal in roller-skating in the Special Olympics.  He also stated that "with respect to the claimant's functioning and limitations, Ms. Kloch parroted the claimant's allegations."  Tr. 18.

"If the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114.  Here, Kloch's function report was nearly identical to Slayter's function report. For example, Slayter reported that she "is learning to prepare complete meals," and Kloch reported Slayter "is trying to learn to prepare complete meals."  In response to the question: "How often does she prepare food or meals?" both replied "Almost Daily".  In response to the question:  "How long does it take her?" both replied "All Day."  In response to the question: "Any changes in cooking habits since the conditions began?" both reported "Still Learning." Kloch and Slayter gave identical responses to questions asking for a list of household chores done by Slayter, how much time it takes her to perform the chores, whether Slayter needed help or encouragement in activities and how often she would go outside.  The only portion of Kloch's

function report that provided any information not already in Slayter's function report was in the remarks section where she described Slayter as a hard worker and very determined to succeed in the Special Olympics competition. Tr. 190.

In her testimony before the ALJ, Kloch did not provide much additional evidence of Slayter's condition. Kloch testified that Slayter could perform simple tasks if she had positive supervision on a regular basis, that Slayter had tried to live on her own but had not been successful and needed the help of her parents and that Slayter taught herself how to use Facebook and was "pretty good with that." Tr. 87. For the most part, Kloch's function report and testimony did not provide more insight and detail as to Slayter's difficulties, it merely repeated the claims made by Slayter, and the ALJ could reject the Kloch's lay statement for the same reason he rejected Slayter's subjective statements. *Molina*, 674 F.3d at 1114. The ALJ's reason for rejecting Kloch's statements is set out in his decision: "the subjective statements and allegations of the claimant and third-party witnesses are not credibly supported by the weight of the evidence…" (emphasis supplied). The ALJ provided a germane reason for disregarding Kloch's opinion.

Even if the ALJ's explanation was erroneous, that error was harmless. In *Molina*, the court held that "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony" the ALJ's failure to discuss lay witness testimony is not prejudicial. *Molina*, 674 F.3d at 1117.

C.    Dr. Roman's Opinion Evidence

Slayter contends the ALJ failed to give clear and convincing reasons for rejecting the opinion of Dr. Roman, the examining psychologist. There are three types of medical opinions in

social security cases: those from treating physicians, examining physicians, and non-examining physicians. *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir.1995). An ALJ can reject an examining physician's opinion that is inconsistent with the opinions of other treating or examining physicians, if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart,* 278 F.3d at 957 quoting *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989); Lester, 81 F.3d at 830. An uncontradicted opinion may be rejected for clear and convincing reasons. *Thomas,* 278 F.3d at 956-57.

Slayter's record contains two medical examinations that are specific to her mental impairments. Both examinations were performed by the same psychologist.[2] The first, completed in December of 2009 at the request of the Oregon Department of Human Services, was a thorough intellectual assessment of Slayter including a review of Slayter's past medical records, a clinical interview, and the administration of memory tests and the Beck Anxiety Inventory (BAI). Tr. 303. The second exam was performed in September of 2011 and consisted of little more than a brief mental status examination. Tr. 418.

In the 2009 assessment, Slayter reported she has no difficulty with personal care, preparing meals, doing household chores, using the bus, or shopping. For approximately four years, she and her young children lived independently before moving back in with her parents. She reported that she worked at Wal-Mart for two years, and at two Dari-Marts for a total of 5 years. She listed anxiety as her only medical condition and noted that it was hard for her to keep

---

[2] Dr. Joffe performed both exams. She changed her name to Dr. Roman sometime between the date of the first exam and the second. The ALJ was unaware that Dr. Joffe and Dr. Roman were the same person.

a job because of her learning disability. Tr. 305. Slayter's responses to the BAI indicated mild symptoms of anxiety. Tr. 308.

Dr. Roman considered Slayter's functional capacities. She reported that Slayter completed the paperwork for the assessment independently and appropriately, although there were some misspelled words. Tr. 305-06. She reported that Slayter performed "perfectly on the Information & Orientation items" of the Wechsler Memory Scale, Revised (WMS-R). Intelligence testing indicated Slayter ranged from Borderline (2nd percentile in verbal comprehension) to Average (75th percentile in Perceptual Reasoning-Picture Completion), with her overall intellectual functioning better than only 4% of same age peers. Dr. Roman concluded: "Slayter was able to understand and remember simple instructions during the interview. She reports that more complicated instructions confuse her and given her intellectual functioning she is no doubt correct." Tr. 308.

Dr. Roman's 2011 assessment of Slayter is entitled "Individual Service and Support Plan." Tr. 419. The report consists mainly of checked boxes and focuses on Slayter's anxiety. The report indicates that Slayter experiences anxious feelings including a rapid heartbeat and shortness of breath multiple times per week, but not daily. Dr. Roman identified attendance, and not the other options of concentration, conflict or performance issues, as a barrier to Slayter's employment. Tr. 421. Following that examination, Dr. Roman filed a Mental Residual Function Capacity Report. Tr. 415. In this report, Dr. Roman indicated the onset date of Slayter's disability as birth. Tr. 416. Dr. Roman also noted that Slayter had no difficulty understanding, remembering, or carrying out "very short and simple instructions" but was markedly limited in her ability in three areas: understanding and remembering detailed instructions; carrying out detailed instructions; and, sustaining an ordinary routine without special supervision. Tr. 415-16.

The ALJ gave more weight to Dr. Roman's 2009 assessment saying "it appeared to be more thorough and her findings were more consistent with the fact that the claimant was able to sustain competitive employment for years." Tr. 19. In rejecting Dr. Roman's 2011 assessment, the ALJ commented that "Dr. Roman's finding that the claimant would require special supervision does not account for her work history or her independence in daily life." Tr. 19. The fact that both reports were supplied by the same physician does not mean that the ALJ must give them equal weight. The 2009 report was a result of a thorough examination of Slayter. It provided long narrative discussions of Slayter's capabilities and included specific results from diagnostic tests. In addition, the 2009 report was consistent with the reports of reviewing psychologists Kodell Kennemer, Psy.D. and Dorothy Anderson, Ph.D., both of whom concluded that Slayter was capable of performing simple and routine tasks. Tr. 323 and 333. The ALJ's decision to reject Dr. Roman's 2011 assessment was well supported by the evidence in the record.

Following the ALJ's decision in this case, Dr. Roman submitted a letter indicating that conclusions she reached in the 2011 Mental RFC Report were based on the assessment she performed in 2009. When a claimant submits new evidence for the first time to the Appeals Council, the district court must determine whether, in light of the record as a whole including the evidence submitted for the first time to the Appeals Council, the commissioner's decision is supported by substantial evidence. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012). This newly submitted letter does not help Slayter's position. The findings in the 2009 assessment do not support the conclusions in Dr. Roman's 2011 Mental RFC Report that Slayter had markedly limited abilities in three areas. To the contrary, the 2009 assessment notes that Slayter was able to understand and remember simple instructions and was able to work and

maintain jobs that have repetitive tasks. The 2009 assessment describes Slayter's independence in her daily activities, including attending her own medical appointments, shopping on her own, using the bus, preparing meals and playing computer games. While the 2009 assessment discusses Slayter's inability to follow complicated instructions, that is consistent with the ALJ's determination in this case that Slayter has the RFC to perform only simple, routine tasks. Finally, there is nothing in the 2009 assessment that mentions impairments that would require special supervision for simple, routine tasks.

The ALJ had legitimate reasons for rejecting the 2011 assessment and Mental RFC Report. Considering the record as a whole, including the evidence submitted for the first time to the Appeals Council, the ALJ's RFC assessment remains supported by substantial evidence.

### III.    Step Five Vocational Evidence

At step five, the Commissioner must show that work exists in the national economy that is not precluded by the claimant's RFC. *Andrews*, 53 F.3d at 1043 (9th Cir. 1995). The Commissioner can satisfy this burden by eliciting the testimony of a vocational expert with a hypothetical question that sets forth all the limitations of the claimant. The assumptions in the hypothetical question must be supported by substantial evidence. *Andrews*, 53 F.3d at 1043.

Slayter contends the VE's testimony is not supported by substantial evidence because the ALJ's hypothetical assumptions did not reflect a person who was markedly limited in the ability to sustain an ordinary routine without special supervision. The limitation raised by Slayter is found in Dr. Roman's 2011 assessment, an assessment that was properly rejected by the ALJ. The ALJ's hypothetical question accurately reflected his assessment of Slayter's RFC . *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001) (a hypothetical question need not include limitations the ALJ finds unsupported by the record.) Accordingly, considering the

record as a whole, including the post-decision evidence from Dr. Roman, the ALj's step five

conclusion that jobs exist in the national economy that are not precluded by the limitations in

Slayter's RFC assessment, remains supported by the VE's testimony.

**CONCLUSION**

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

DATED this _____ 11-th ____ day of November, 2013

Robert E. Jones, Senior Judge
United States District Court